# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LELA SAMARGIS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-13-309-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Lela Samargis requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 26, 1943, and was sixty-nine years old at the most recent administrative hearing (Tr. 250). She has completed more than four years of college, earning a Master's Degree at divinity school, has worked as an office clerk, and also acquired additional skills with her Master's Degree (Tr. 114, 235). The claimant alleges she was unable to work between June 1, 2005 and November 24, 2008, due to pulmonary heart disease, arthritis, and high blood pressure (Tr. 110).

## Procedural History

On January 12, 2006 the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her original application was denied. ALJ Lantz McClain held an administrative hearing and determined the claimant was not disabled in a written decision dated August 14, 2007 (Tr. 15-21). The Appeals Council denied review, but on appeal the Northern District of Oklahoma reversed the decision of the Commissioner in Case No. CIV-08-40-SAJ and remanded the case for further proceedings on December 30, 2008 (Tr. 293-302). ALJ David W. Engel then conducted a second hearing and again determined that the claimant was not disabled in a written opinion dated March 7, 2011 (Tr. 319-328). On appeal, the Appeals Council remanded the case on January 5, 2012 to the ALJ for resolution of the following issues: (i) clarification that the decision is based on evidence exclusively belonging to the claimant, (ii) an adequate evaluation of the treating source opinion submitted by Dr.

Theresa Loftin, and (iii) a proper consideration of the claimant's obesity (Tr. 336-338). ALJ Engel then conducted a third administrative hearing and again determined that the claimant was not disabled in a written opinion date June 29, 2012 (Tr. 222-237). The Appeals Council then denied review, so ALJ Engel's June 29, 2012 written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light and sedentary work, *i. e.*, as to lifting, carrying, pushing, and pulling, she was limited to light and sedentary exertion, and she could stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday, with the additional limitations of occasionally bending, stooping, crouching, crawling, kneeling, balancing, climbing stairs, and climbing ramps, but no climbing ropes, ladders, and scaffolds, or working in environments where she could be exposed to unprotected heights and dangerous moving machinery parts. He found that she was able to understand, remember, and carry out simple through complex instructions in a work-related setting, and could interact with co-workers and supervisors under routine supervision. He noted that her moderate chronic intermittent pain, fatigue, and allied disorders would be noticeable at times, but that she could nevertheless remain attentive and responsive in a work setting (Tr. 228). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economy

that she could perform with very little, if any, vocational adjustment based on her recently-completed Master's degree, *e. g.*, receptionist and case worker (Tr. 235-236). Noting that the claimant fit the "rare situation where the individual has recently completed education which provide[d] a basis for direct entry into skilled sedentary work," the ALJ found the claimant "not disabled" under Medical-Vocational Guidelines Rule 201.07 (Tr. 236-237).

**Review**

The claimant contends that the ALJ erred: (i) by failing to account for her obesity, (ii) by relying on evidence not discussed in the decision, and (iii) by failing to properly include limitations in her RFC. Specifically, she argues that the ALJ failed to include limitations related to her arthritis, failed to question the vocational expert (VE) as to those impairments, and further improperly rejected Dr. Loftin's opinion with regard to her hand impairments. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found that, from June 1, 2005 through November 24, 2008 – the requested closed period of disability – the claimant had the severe impairments of coronary artery disease and arthritis, along with the non-severe impairment of obesity (Tr. 226-227). On May 19, 2006, Dr. Wojciech L. Dulowski completed a consultative physical examination of the claimant. He noted that the claimant had normal reflex, normal gait and motor function, and that she walks normally, had good safety and stability and could walk on her heels and tiptoes, and did not use any assistive devices. He also noted that her grip strength was 4/5, and that she had "good gross and fine

manipulation" (Tr. 159). Her lumbar, cervical, and thoracic spine were normal, she had full range of motion despite some pain on flexion, and there was no muscle spasm or tenderness in the midline. Her upper extremities also had full range of motion, and he noted some arthritis nodules on her fingers with slight synovitis of her PIP joint, "but range of motion is full" (Tr. 159). He assessed her with chest pain secondary to coronary artery disease, as well as a history of hypertension, hyperlipidemia, polyarthritis, and rosacea (Tr. 159).

Upon reviewing the record, a state physician found on June 28, 2006 that the claimant could perform the full range of sedentary work, and this finding was affirmed upon review (Tr. 166-173).

On May 17, 2007, Dr. Theresa Loftin completed a physical RFC Questionnaire. In it, she stated that the claimant's diagnosis was coronary heart disease, 30% stenosis, with a fair prognosis and symptoms including pain, dizziness, fatigue, nausea, and stiffness (Tr. 208). As a result of her impairments, Dr. Loftin indicated that the claimant could walk zero blocks without rest or severe pain, could sit about two hours total in an eight-hour workday and stand/walk less than two hours total, that the claimant would need periods of walking around for about five minutes every hour, and that she would need a job that allowed her to shift positions at will (Tr. 209-210). Additionally, Dr. Loftin stated that the claimant would need to take unscheduled breaks during the workday every hour for ten to fifteen minutes, that she could occasionally lift less than ten pounds and twist or stoop, but could never crouch, climb ladders, or climb stairs (Tr. 210). Furthermore, Dr. Loftin stated that the claimant had significant limitation in doing

repetitive reaching, handling, or fingering, such that during an eight-hour workday she could: (i) use her hands to grasp, turn, and twist objects 5% of the time; use her fingers for fine manipulation 10% of the time; and use her arms for reaching, including overhead reaching, 5% of the time (Tr. 210). She indicated that the claimant's impairments would produce good days and bad days, that she would be absent more than four days per month from work, and that other limitations included vision impairment and a need to avoid extremes of temperatures and fumes as well as shortness of breath with humidity (Tr. 211).

On May 5, 2008, the claimant went to a clinic for treatment, complaining of pain in her right hip that was getting worse. The doctor assessed her with low back pain with myalgia, noting it was likely secondary to a medication she was taking, along with type II diabetes and hypercholesterolemia (Tr. 557). March 23, 2009 x-rays of the claimant's hands revealed severe osteoarthritic changes involving the first carometacarpal joint on each hand, along with other scattered osteoarthritic changes (Tr. 517-518).

In his written opinion, the ALJ found that the claimant's coronary artery disease had created more than minimal limitations, but that her obesity was well-controlled and did not cause more than minimal limitations. He recounted her most recent administrative hearing testimony, then stated, "The summary of the objective medical evidence set out in the prior [ALJ] decision is restated in this decision; however, the findings, conclusions, and decision are not adopted" (Tr. 230). He then further discussed the medical evidence, including the notation regarding the claimant's coronary artery disease and ejection fraction findings from 2004. As to Dr. Loftin's Chest Pain

Questionnaire, he recounted the claimant's reports, and further summarized Dr. Loftin's RFC Questionnaire. He did note Dr. Loftin's indication that the claimant was able to use bilateral hands for grasping, turning, and twisting objects five percent of the day. He further acknowledged that x-rays of the claimant's hands revealed severe osteoarthritic changes on March 23, 2009 (Tr. 230-231). In evaluating Dr. Loftin's opinion, the ALJ noted that she was a family practice physician and *cardiologist*, who had seen the claimant since January 2004 through January 2007. He declined to give the opinion controlling weight and instead assigned it little weight because: (i) Dr. Loftin's treatment notes reflected no findings at all related to orthopedic/joints other than one notation that the claimant had normal range of motion, strength, and tone; (ii) there were no findings of edema or neurologic abnormalities; (iii) the treatment notes specifically did not support any sort of finding that the claimant could only use both hands for grasping, turning, and twisting objects five percent of an eight-hour workday, use her fingers for fine manipulation ten percent of the day, and use her bilateral arms for reaching (including overhead) five percent of the day; (iv) the findings were also inconsistent with the claimant's reports that despite gaining weight she remained active by climbing stairs, and (v) she was able to complete work on her Master's Degree during this time (Tr. 233). As to Dr. Dulowski's opinion, the ALJ noted the treatment records and a diagnosis of polyarthritis, but also the grip strength of 4/5, that she had good gross and fine manipulation, and a full range of motion of the upper and lower extremities (Tr. 232). The ALJ then specifically balanced the 2009 x-rays revealing severe osteoarthritic changes with the earlier (within the alleged disability range) objective findings related to

grip strength and her completion of her divinity degree. He then stated that there was no objective imaging of the hands to show a progression of the claimant's arthritis, and noted that she had since returned to the workforce (Tr. 232). The ALJ then noted he had considered the opinions of the state reviewing physician and noted he agreed with much of their findings but that, in light of her arthritis, fatigue and chest pain, she would be limited to only occasional for postural activities and not be allowed to climb ropes, ladders, and scaffolds, or work in environments where she was exposed to unprotected heights and dangerous moving machinery parts (Tr. 233-234).

The claimant first contends that the ALJ erred by failing to properly consider her obesity. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2000 WL 628049 at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." Soc. Sec. Rul. 02-1p, 2000 WL 628049 at *6. Here, the record reflects that the claimant's weight ranged from 170 to 194 pounds and she is

five feet, one inch tall. (Tr., *e. g.*, 158, 191-195, 200, 251, 547, 557). The claimant argues that ALJ failed to properly account for her obesity, but the ALJ *did* adequately discuss the claimant's physical and mental impairments and the reasons for his RFC determination. Furthermore, the claimant failed to point to evidence that the claimant's obesity exacerbated her arthritis, instead arguing that there "surely" is some relationship there and suggesting that the ALJ should have speculated as to the impact of her obesity. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments.").

The claimant next contends that the ALJ erred when he made the statement that the "summary of objective medical evidence set out in the prior ALJ decision is restated in this decision" (Tr. 230). This argument ignores the fact that the ALJ further stated, "however, the findings, conclusions, and decision are not adopted" (Tr. 230). Furthermore, the ALJ did not simply rely on the previously-described evidence, but provided a detailed discussion of the relevant evidence in the record, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *Hill*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can

determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Last, the claimant argues that the ALJ failed to properly account for the claimant's arthritic hands. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including Dr. Loftin, who was the only physician to impose any physical limitations on the claimant that were inconsistent with her RFC. The ALJ was required to assign controlling weight to the medical opinion of a treating physician only if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 and Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency

between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *4.

The ALJ's treatment of Dr. Loftin's opinion meets these standards. The ALJ's analysis of the opinion of Dr. Loftin is set forth above, and as the claimant herself points out, Dr. Loftin is a cardiologist, not a rheumatologist. The Court finds that the ALJ considered her opinion in accordance with the appropriate standards and properly concluded it was entitled to little weight. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Loftin in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was thus sufficiently clear for the Court to determine the weight he gave to Dr. Loftin's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2).

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**